JAMES VAN SYCKLE

*v.*

MANASSAH KLINE et al.

At a partition sale of lands, complainant's mother bought one of the tracts,
but, by a previous agreement, bought it for complainant, who paid for it. The
sale was confirmed, and deeds ordered to be made to the several purchasers
by name.   The parties were advised by counsel that the commissioners could
not make a deed for the tract to complainant, and hence it was executed to
his mother.—*Held,* that, after the mother's death, complainant was entitled
to relief, and the fact that his mother paid the taxes on the tract for several
years would not estop him.

Bill for relief.    On final hearing on pleadings and proofs.

*Mr. J. G. Shipman,* for complainant.

*Mr. J. M. Robeson,* for the answering defendants.

THE CHANCELLOR.

This is a suit by the son of Anna Van Syckle, deceased, of Belvidere, against her other heirs-at-law, to compel them to convey to him a lot of about ten acres, within the corporate limits of that town, which he alleges was held by her in trust for him. The trust set up in the bill is a resulting trust. The complainant states that, after the death of his father, which occurred in 1848, a partition of the land of which the latter died seized, was sought, in the course of which the land was sold (in the spring of 1851) by virtue of a judicial order. The property consisted of a farm, distant about one mile from Belvidere, a wood-lot of about six acres, and the lot in question. At the sale, the wood-lot was struck off to the complainant for $273.79, and it was conveyed to him by the commissioners accordingly. The rest of the property was struck off to his mother (the farm for $4,828.30, or thereabouts, and the lot for $774.40), and was conveyed to her by the commissioners, and she held the title to it up to the time of her death, which took place in July, 1867. The complainant alleges that it was agreed between him and his mother, before the sale, that she should, if she bought the farm, buy the lot in question for him. It appears clearly, by the evidence, that that agreement was made, and that in pursuance of it, she bought the property for him, and that he paid the purchase-money with his own funds, when the deed was taken, and that he and his mother, at that time, requested the commissioners to convey the lot to him, but they declined because, and merely because, the order confirming the sale, by its terms, directed them to convey it to her as the purchaser. It also appears that afterwards, she, from time to time, promised to convey the property to him, and at times, until she became offended with him because he had married against her will, was anxious that he should have a deed for it, but after his marriage, she, in her anger, refused to convey the property to him, up to within a few months of her death, when she exhibited contrition for her conduct in the matter, and again expressed anxiety that he should have the title, and her willingness to make the conveyance to him. It is insisted by the defendants that the complainant, in

fact, never paid the purchase-money, but the evidence that he did so is overwhelming. Apart from the fact that he swears that he paid it, it appears conclusively, from her admissions proved by other witnesses. Mary Jane Heldemore, her grand-daughter, testifies that she (Mrs. Van Syckle) said the lot be-longed to the complainant, and that she had never given him a deed for it; that if he had not gone off and got married, she would give him one, but that, in view of his conduct in leaving her and getting married, she would not give him one till she got ready. She says that, after his marriage (which took place in January, 1863), she heard him ask her to give him a deed for the lot, and she said she would not until she got ready, because she said he had abused her by leaving her and getting married, and she said that if he had not married, she would have given him his deed. This witness further testifies that, in the summer of 1864, Mrs. Van Syckle, in conversation with her on the subject, wept, and said she had done wrong in not giving him his deed. She also says that Mrs. Van Syckle told her that the lot was the complainant's, and that he had paid for it. William Miller, a nephew of Mrs. Van Syckle, testifies that, in the fall of 1863, she said at his house, that the complainant's money had paid for the lot, and he ought to have a deed for it, but he should not have it so long as she lived, because he had married. Philip Miller, her brother, says that he frequently heard her say that the lot belonged to the complainant, and that she meant to give him a deed for it. James V. Hay testifies that in the fall of 1863 or 1864 she told him that she had bought the property herself, but that she bought it for the complainant, and he had paid for it. Rebecca Butler swears that she admitted, in her presence, that he had bought the lot and paid for it with his own share, and the witness further says that, subsequently, and in the spring preceding her death, which took place in July, she said to the witness that she thought she was wicked in not giving the complainant a deed for the lot, and added that, when she got well enough, she would go over to Mr. Kennedy (a lawyer of Belvidere) and have a deed drawn for him. And three days before she died, she sent one of her daughters to the complainant

Van Syckle v. Kline.

to tell him to come to Belvidere, where she was then living, and get his deed. That he had the money to pay the price is clear also. The testimony of Dr. Brakely (one of the commissioners) is very strong evidence in favor of the complainant. He says that when the deed for the farm and lot was delivered, there were present, Mrs. Van Syckle and two of her daughters, and the complainant; that the question was asked among the party whether the lot in question could not be conveyed to the complainant, and that he asked Mr. Sherrerd, the lawyer by whom the proceedings in partition had been conducted, whether a deed could be made to the complainant, and Mr. Sherrerd told him that it could not; that the court had ordered the deed made to Mrs. Van Syckle, and the commissioners could not change it, but that she could convey to the complainant, if she thought proper. The testimony of this witness is not affected by the counter-testimony adduced for the purpose.

It was in order to obtain the lot at as low a price as possible, that the complainant (who bought the wood-lot at the sale, bidding for it himself) desired that his mother would buy it for him. He thought there would be less competition against her than against him. It being proved that the lot was purchased for him, and that he paid the purchase-money, he is entitled to the property. He has established a resulting trust in his favor. The fact that the property was taxed to his mother, and that she paid the taxes, is of no weight, under the circumstances. There will be a decree for the complainant; and, inasmuch as the answering defendants appear to have been aware of the complainant's claim and of its merits, before the suit was brought, the decree will be with costs, to be paid by them.